Htnman, J.
The appellant in this case claims the benefit of the 10th section of the “ act for the relief of insolvent debtors and for the more equal distribution of their effects among their creditors.” Rev. Stat. (comp, of 1854,) p. 518. This section provides that if an assigning debtor shall comply with the conditions contained in the eighth and ninth sections of the act, “ and not otherwise,” he shall be entitled to certain privileges and benefits specified in the section ; gnd the question is, whether these conditions have been complied with, so as to entitle the appellant to these privileges and benefits.. One of the [ *49 ] conditions contained in section eighth, (p. 516,) *'is that the insolvent debtor shall, within thirty days after the assignment, or the appointment of a trustee, deliver a schedule of all the property, of every kind, (except such gs is privileged bv the act,) owned by him, or in which he had any interest at the time of the assignment or the application for the appointment of a trustee, and make oath to the same as a complete schedule of all such property. The appellant in this case delivered a schedule which is not claimed to be incorrect in any respect, except that in it no notice is taken of the sum of ninety-eight dollars in cash, which the case finds that he then had and still has, claiming that it is privileged by the act, because in the first section of the act it is, among other things, provided that all assignments by persons in failing circumstances shall be void unless they embrace all the property of the assignors, “ except such as is exempt from execution, and except real estate situated out of the state of Connecticut, and excepting also, in the case of sole assignors, the sum of one hundred dollars in cash.” And the claim is made, that, under the last of these exceptions, any sum of money, not exceeding the sum of one hundred dollars, which an insolvent debtor may happen to have on hand at the time of his assignment, he has a right to retain, as privileged by the act, irrespective of any general terms of the assignment which may be such as, otherwise, to transfer the money to the trustee ; and therefore it is claimed that the insolvent debtor has not neglected to comply with any of the conditions of either of the sections referred to. As this is not the *41 case of an involuntary assignment, or transfer of the insolvent’s property into the hands of a trustee for the benefit of creditors under the second section of this act, but is an instrument voluntarily executed, it must of course be assumed that it contains only such provisions, stipulations and exceptions as the assignor chose to incorporate in it, and, moreover, that the assignor comprehended the language which he was using in the instrument and understood its meaning. It is, therefore, to be construed like any other instrument for the transfer of property ; we are to get at its meaning from *the words used in it, [ *50 ] they being clear and free from ambiguity.
There is no doubt in respect to the real estate, for that is all particularly described ; and there is none in respect to the personalty, because such general language is ma'de use of as to include all that the assignor then had or owned which was not specifically excepted in the instrument itself. The words are, “ all my personal estate, goods, wares, and merchandize, debts and choses in action.” This, of course, includes money, and the legal effect is the same upon this ninety-eight dollars as if he had specifically named it in the instrument. We must assume then that the assignor intended to convey all his property that he did not except from the operation of the assignment. He did not except any money, and it was therefore all conveyed to his trustee.
The provision in the first section, under which he would have been permitted to retain the sum of one hundred dollars, has no application to the case, because he chose not to take advantage of it; and the assignment shows this, or he would have excepted it, or would have omitted to use such general language as to include it.
The claim that the ninety-eight dollars is privileged by the act because the assignor had a right to retain it, is too clearly untenable to require illustration or argument. He was privileged to retain it or to assign it as he pleased, and he chose to assign it. The object of a- schedule was to facilitate the settlement of the estate by informing the trustees what property was included in the assignment, and thus enabling him to take immediate possession, and it is of the utmost importance in cases where the information is not given in the assignment itself. Besides, the assignor is not only bound to make a schedule of the property, but it is made his duty also to deliver it over into the trustee’s hands, and he comes with an ill grace to ask for allowances out of the estate while he is withholding from the trustee money belonging to it. It is also said that the insolvent acted in good faith in this case, supposing that the *42 ninety-eight dollars was not conveyed by the general words of the assignment; and that it is Unequitable to deprive him [ *51 ] of the benefits which the statute intended for insolvents who conduct honestly. . This does not appear upon the record, and we must be confined to that. The judge of probate perhaps, on the assignor’s surrendering up all that he has no right to retain, may, in his discretion, allow him a longer time within which to complete his schedule. But with this we have nothing to do.
For these reasons we reverse the judgment of the superior court, and affirm the decree of the court of probate.
In this opinion the. other judges concurred.
Judgment of the superior court reversed-