## NORTON *vs.* KEARNEY, et al.

### APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard November 23, 1859.]                    [Decided January 12, 1860.

### *Assignment—Contract—Estoppel—Fraud—Trespass.*

All contemporaneous agreements between the same parties and in relation to the same subject matter, are to be taken together, and construed as one instrument, for the purpose of determining the character of the transaction, and the intention of the makers.

Where A., being surety for B. upon certain promissory notes, received from him a bill of sale of certain goods purporting to be absolute, but at the same time executed and delivered to B. a written agreement, in which he recited the sale, and in consideration thereof promised, first, to pay in full the demands upon which he was surety; and, secondly, if the proceeds of the goods, when sold by him, should exceed the amount of such demands, to faithfully pay the overplus to the other *bona fide* creditors of B., *pro rata,* according to the amounts of their respective debts, both instruments are to be construed together, and in law, constitute an assignment for the benefit of creditors.

An assignment in which the assignee is "to dispose of the property to the best advantage in his discretion," is valid, and does not imply an authority to sell on credit. The discretion thus vested must be understood to be a legal discretion, to be exercised within the limits of the law in such cases. There being ample room for the exercise of a discretion strictly legal, the law will not presume that the assignor intended the exercise of one which is illegal.

The cases of *Hutchinson vs. Lord,* 1 Wis., 286, and *Keep vs. Sanderson,* 2 id., 42, considered and distinguished.

The law always presumes in favor of innocence and against fraud. It will never infer evil intentions and dishonest purposes from language or conduct which is susceptible of upholding those which are good and honest.

In a complaint for trespass for taking and carrying away goods assigned to the plaintiff for the benefit of creditors, it is improper, and foreign to the purpose of the action, to aver and prove that a mistake has occurred in drawing the assignment. Such a mistake could only be corrected in a direct proceeding for that purpose, where the creditors are made parties.

Norton vs. Kearney et al.

An answer to a complaint *de bonis*, which justifies under a writ of attachment, without avering an indebtedness on which the writ issued, is not sufficient to authorize the defendant to attack the title of the plaintiff by showing that the sale to the plaintiff was fraudulent and void as against creditors.

The case of *Jones vs. Lake*, 2 Wis., 210, considered and approved.

In an action of trespass against several defendants, it is erroneous to instruct the jury that an appraisal, made by one of the defendants, of the goods taken, was conclusive of their value as to all the defendants.

An estoppel *in pais* happens where a party makes a statement or an admission, with the intention of influencing the conduct of another, who acts upon the confidence of such statement or admisson, and will suffer injury if the party is permitted to deny it.

This action was commenced by Nelson B. Norton, against John Kearney, Charles J. Jones, and Washington I. Butler. The complaint set forth that one Charles N. Norton and Charles Nairn were indebted to the plaintiff for money lent, &c., $487; also that he became surety for them on several promissory notes, amounting to $708,85, with interest, and to secure the payment of the same, Norton and Nairn sold and assigned a stock of merchandise, then in the store of one Barnes, at Burlington, Racine county, and put him in possession of the same: that the consideration was that the plaintiff should cancel his debt from Norton and Nairn, which he had done; and an agreement that was then entered into that he should pay all the notes on which he was surety, and save them harmless; that he should dispose of the stock to the best advantage, in his discretion, and if the proceeds should exceed in amount the indebtedness to him and the notes, then he should pay the overplus to the other *bona fide* creditors of Norton and Nairn, *pro rata,* according to their demands. This agreement was reduced to writing and signed by the parties; but in doing so, by an oversight and mistake in drawing it up, the debt due to him was omitted, as also one note of $75 dollars; that he had paid off all the demands. That a few days after he had taken possession of the stock of goods, the defendants entered the store and took and carried away the goods, &c., and he demanded judgment for their value.

The answer of the defendants is, 1st, a general denial. 2d, Justification: that Kearney was deputy marshal, and the others acted by his direction; and that he had three writs of attachment, issued out of the United States District Court for the district of Wisconsin, against Norton and Nairn, and

against Norton and Perkins, who were the partners previous to Perkins selling out to Nairn; and that all that was done by the defendants, was done by virtue of and in pursuance of said writs of attachment.

On the trial the plaintiff read the following bill of sale:

"For value received, we, the undersigned, do hereby sell and fully transfer and convey to Nelson R. Norton, all the goods, wares and merchandise now in the store of C. P. Barnes, in the village of Burlington, Racine county, Wisconsin, kept by us. Received payment in full, by the obligation of said Nelson R. Norton, bearing this date, made by him to us. Witness our hands and seals, this, the 26th of November, 1856."

CHARLES N. NORTON, (seal.)
CHARLES NAIRN, (seal.)

On said sale, the plaintiff executed a written agreement in the words and figures following, to wit:—

"Whereas the firm of Norton and Nairn, merchants, of Burlington, Wisconsin, have sold and conveyed to me their entire stock of goods, wares and merchandise, at Burlington, aforesaid: And whereas I have heretofore become surety for them, and obligated to pay the following debts, viz:

"One promissory note to Ebenezer Adams, of about $225, including interest. One promissory note to J. R. Mills & Co., for $358 about, besides interest; and one note to John Toomer, of $55 and interest.

"Now therefore, in consideration of the premises, I hereby promise to pay said demands in full, and save said Norton and Nairn, and each of them, harmless and indemnified of, and from all costs and expense, for or on account of the same.

"And I further promise said Norton and Nairn that I will dispose of said goods, wares and merchandise to the best advantage, in my discretion; and, if the proceeds thereof, when sold by me, shall exceed in amount the sums above specified, I will faithfully pay such overplus to the other bona fide creditors of said Norton and Nairn, pro rata, according to their respective amounts of such credits."

NELSON R. NORTON. (seal.)

Burlington, November 26th. 1856.

The plaintiff also proved by Charles N. Norton, that the goods had been delivered, and that there was a mistake in drawing the assignment, as charged in the complaint. This

last was objected to and admitted. He also proved that the defendants had broken open the store and taken possession of the goods, and finally sold them. The goods were appraised by defendant Jones and one Sheldon, after they were attached, and all the defendants acted in taking, holding, and selling the goods. The plaintiff proved his possession of the goods from the time of the sale until they were taken by the defendants. He also proved that the inventory made by the appraisers, at New York prices, amounted to $2,333.

The defendants proved the levy under the attachment, as answered, and also attempted to prove some statements made by the plaintiff. The court charged the jury that "it was claimed by the plaintiff that a portion of the consideration for which the property was transferred to plaintiff, was, by mistake, omitted from the written agreement; that it was competent for the plaintiff to show that mistake on the trial, by parol evidence; that the consideration or interest of the plaintiff, mentioned in the paper, was not very important in this action, but that he could prove the agreement as it really was, and that he was entitled to recover according to the facts so proved; that the note of $75 to Northop, and the loan of $487, were, if proved to their satisfaction, as much a part of the consideration for that agreement, as though they had been specified in the writing, and that the plaintiff had the same right to recover for them, if satisfactorially proved, as he would have had if they had been included in the written agreement.

"The sale in this case was not an absolute and unconditional sale, and by it the plaintiff did not become the absolute and unconditional owner of the property. Neither was it a pledge of the property to the plaintiff to secure his claims, for in that case, the surplus would belong to the pledgors, Norton & Nairn; but in this case, the surplus was to be divided among the creditors of Norton & Nairn.

"It bears some resemblance to a chattel mortgage, and comes nearer to that than to an absolute sale, or a pledge, but I do not think we can regard it as a chattel mortgage. What is it then? I am of the opinion that it must be considered and held to be an assignment for the benefit of all the creditors, with a preference to the plaintiff, and I therefore instruct you, that if you are satisfied that Norton & Nairn owed plaintiff, or that the plaintiff was liable for the debts specified, then the transfer was a good and valid transfer, as an assignment for

the benefit of creditors, and the property was not afterwards subject to be levied on or attached as the property of Norton & Nairn, but if you find that they were not indebted to the plaintiff, then the transfer was void, and the stock was liable to attachment.

"If this had been an absolute purchase by the plaintiff, of $2,000 worth of goods to secure a debt of twelve hundred, it would have been fraudulent, if plaintiff knew, at the time of the purchase, that Norton & Nairn were in failing circumstances. The plaintiff, if entitled to recover at all, is entitled to recover the full value of the goods; and, inasmuch as one of the defendants made the appraisal of the goods after they were attached, I instruct you that the defendants in this suit are estopped to question the correctness of that appraisal, and therefore your verdict, if for the plaintiff, should be for the amount of that appraisal, with interest from the time of the taking of the goods by the defendants.

The counsel for the defendants then requested the court to instruct the jury that if the transfer of the stock of goods by Norton & Nairn to the plaintiff was made, partly for the purpose of indemnifying the plaintiff, partly for the purpose of putting the goods beyond the reach of other creditors, it was fraudulent and void as to creditors. Also, that if the jury believe, from the evidence, that the plaintiff knew that Norton & Nairn were embarrassed at the time of the transfer, then the transfer was void, except to the extent of the indebtedness of Norton & Nairn to the plaintiff, if any, and the liability of the plaintiff for the firm. That, if they found that the $487 was furnished by the plaintiff to his son, then the firm of Norton & Nairn were not responsible to plaintiff for that sum, and he cannot recover in this action for that claim. Which instruction the court refused to give, as requested; but charged that such was the law, unless the jury believed that the money went into that business, and the firm adopted it as the firm liability. That if they believed that the $487 was an advancement made by plaintiff to his son, without any agreement or understanding at the time, that it would be repaid, then it is not a debt due to the plaintiff, and that he is not entitled to recover for it in this action. That the transfer to plaintiff was only in the nature of a pledge, or chattel mortgage, to secure the amount actually his due from Norton & Nairn, and that the interest of Norton & Nairn in said property was subject to attachment and execution. Which instructions the court refused to give.

The issue was then submitted to the jury, and they returned a verdict for the plaintiff for $2,639 10; upon which judgment was entered, and the defendants appealed.

*J. W. Cary,* for the appellant.

*Lyon & Adams,* for the respondent.

*By the Court,* DIXON, C. J.   There is no rule better established than that all contemporaneous agreements between the same parties, and in relation to the same subject matter, are to be taken together and construed as one instrument for the purpose of determining the character of the transaction, and the intention of the makers.   It is unnecessary to cite authorities in support of this rule, as they are familiar to every lawyer.   Accordingly the bill of sale of Norton & Nairn to Nelson R. Norton, and his agreement back to them, made on the 26th of November, 1856, are to be construed together.   When so considered, they clearly amount to an assignment for the benefit of creditors with a preference to those creditors, to whom Nelson R. Norton stood in the relation of surety for the assignors.   No particular form of words or instrument are necessary to contribute a valid assignment of chattels or things in action.   Any valid transfer by which the uses and trusts for which the property is assigned, and to which it is to be appropriated by the transferee, are intelligibly indicated and declared, is an assignment. Nothing can be clearer than that Newton, the assignee, received the goods for the purpose of disposing of them, and applying the proceeds, *first,* to the notes upon which he was surety, *secondly,* to the payment of the other debts of Newton and Nairn, *pro rata.*   The only feature in which it differed from ordinary assignments made with a view to insolvency, except in matters of form, is that the assignee covenanted absolutely to pay the preferred debts in full and to save the assignors harmless from all costs and expenses on account

thereof. This in no way changed the character of the instrument. If assignors see fit to indemnify themselves by the insertion of such covenants with the assent of the assignee, there can be no objection to their doing so. The fact that Norton & Nairn were insolvent, and contemplated a total suspension of business, tends strongly to show that an assignment was intended. Numerous cases are to be found in the books where instruments though not in the form of assignments have been held to be valid and binding as such.

In *Sharpless vs. Welch*, 4 Dall., 279, A being indebted to several persons in Philadelphia remitted a bill to B in his favor, saying at the same time, that in a few days he would send directions about its disposition, which he accordingly did, and appropriated the proceeds of the bill among certain of his creditors; subsequently one of them levied a foreign attachment upon A's funds in the hands of the acceptor of the bill, and of B. It was held that B became a trustee for the creditors, from the time of receiving A's appropriation, and that the creditors thereupon acquired such an interest in the trust fund as could not be disturbed or affected by the attachment. In *Watson vs. Bagaley*, 12 Pa. St. R., 164, a power of attorney to collect certain moneys and pay them to certain creditors, in a prescribed order of preference, was holden to be virtually an assignment. In *Beers vs. Lyon*, 21 Conn., 604, an absolute bill of sale by a debtor in failing circumstances was held to be an assignment, and the vendee a trustee of the property.

As an assignment for the benefit of creditors it does not fall within the principles of *Hutchinson vs. Lord*, 1 Wis., 286, and *Keep vs. Sanderson*, 2 Wis., 42. In those cases it was determined that a clause in the assignment authorizing the assignee to sell and dispose of the assigned property upon such *terms and conditions*, as in his judgment might appear best, and most for the interest of the parties concerned; in-

Vol. X.                    29

cluded a power *to sell upon credit*, and therefore rendered the transfer fraudulent and void. In the present case those words do not occur, nor are. those of an equivalent meaning used. The language used is: "And I further promise said Norton & Nairn that I will dispose of said goods, wares and merchandize to the best advantage, *in my discretion,*" &c. It is contended that the words, "in my discretion," are as broad and comprehensive as the words "upon such terms and conditions," and necessarily imply an authority to sell upon credit. We are of opinion that the discretion here vested must be understood as a legal discretion, that is, a discretion to be exercised within the limits which the law fixes in such cases. There is ample room for the exercise of this discretion without transcending any rule of law. It must be held to apply to the mode of sale as to whether it shall be public or private, by the quantity or single article, and the various other details of such transactions. By this construction the instrument is sustained and its language satisfied.

We have examined the cases of *Kellogg vs. Slawson,* 1 Kern., 302, and *Nye vs. Van Huson,* 6 Mich., 329, cited by counsel for the defendant in error, and are abundantly satisfied with the reasoning of the courts, as applied to the facts of this case. In the former case, the earlier New York decisions holding assignments, authorizing the trustees to take possession of the property, and sell and dispose of the same, *upon such terms and conditions* as in their judgment might appear best, and most for the interests of the parties concerned, invalid, as authorizing a sale upon credit, are directly overruled by the court of appeals; and an assignment containing such a clause is held valid. The reasons given are, that the discretionary power conferred by the expression, " terms and conditions," is to be exercised within legal limits; that the law will not imply an unlawful discretion, not given by express words, and will not defeat the instrument by inferring

that the assignor contemplated an unlawful act; but that legal intendments are always in favor of its validity. It was further observed that there was ample room, within legal bounds, for the exercise of the discretion conferred, whilst there was no express authority given to sell on credit, or to do any other thing prohibited by law. Various authorities are cited in support of the construction given. *Nye vs. Van Huson* is to the same effect. Both appear to have been determined, in accordance with the fundamental principle, that the law always presumes in favor of innocence, and against fraud; that it will never infer evil intentions and dishonest purposes from language or conduct which is susceptible of upholding those which are good and honest; its maxim being: " *Odiosa et inhonesta non sunt in lege præsumenda, et in facto quod in se habet et bonum, et malum, magis de bono, quam de malo, præsumendum est.*"

The allegation in the complaint, that a mistake occurred in drawing the assignment, by which the debt due the respondent was not named in the list of preferred claims, seems altogether foreign to the purposes of this action. If such mistake occurred, the rights of the parties are no way changed or affected by it. The instrument being *prima facie* valid as an assignment, it could make no difference with the plaintiff's right of recovery, as against supposed trespassers, whether the order in which the debts were to be paid was or was not that intended by the parties. That was a matter in which creditors alone were interested, and with which the defendants, when prosecuted in the character of wrong doers, had nothing to do. It could only be inquired into in a direct proceeding to correct it, where all persons interested could be made parties. The assignment, in effect, provided first, for the payment of the debts particularly named, and then for a distribution of the surplus proceeds, if any, *pro rata* among all the other creditors of the assignors. How could proof that the assign-

ors intended to include one of the latter class of creditors among the former, affect this action? It is evident that it could neither strengthen nor impair the validity in law of the instrument. It presented ground for equitable relief, but such was not the object of this suit. The proper parties were not before the court. It is equally obvious that it was neither directly or indirectly connected with the question of fraud *in fact*. If the defendants had admitted the mistake, it would have placed them in no worse situation; nor would it in any possible state of proof have relieved the plaintiff in the least. The defendants should have moved to strike it from the complaint, as irrelevant; and on their failing to do so, the circuit court should have excluded the testimony offered under it, as wholly immaterial. This view strips the case of many objections and exceptions, on the part of the appellants, some of which appear otherwise well taken, but all of which it becomes unnecessary for us to consider.

We shall, therefore, only notice such as do not grow out of the admission of this improper testimony. The declarations of the assignors, made after the assignment, as to their circumstances and intentions, were properly held inadmissible. They were mere hearsay. *Roberts vs. Justice*, 1 C. & K., 93; (47, E. C. L., 93;) *Paige vs. Cogwin*, 7 Hill, 361; and cases there cited.

The position assumed in this court, that the defendants were not entitled, under their answer, to attack or impeach the transfer as fraudulent, as against creditors, is no doubt correct. This objection does not appear to have been taken in the court below. If it had, no doubt the evidence offered for that purpose would have been excluded, unless an amendment of the pleadings had been allowed, upon a proper application for that purpose. The answer alleges no indebtedness from Norton & Nairn to the attaching creditors. The affidavits were not proof of it, and if they were, they were inadmis-

Norton vs. Kearney et al.

sible for that purpose, without a proper allegation in the answer. It was held by this court, in *Jones vs. Lake*, 2 Wis., 210, that the party attacking a sale as fraudulent and void, as against creditors, must first show his relation of creditor.

That part of the charge in which the jury were instructed that inasmuch as the defendant, Jones, was one of the appraisers who valued the goods, at the time they were seized in attachment, all the defendants were estopped from denying the correctness of the appraisal, and that if they found for the plaintiffs, their verdict should be for the appraised value and interest, from the time of taking, was clearly erroneous. In no view was the act of appraising the goods one which ought to preclude the defendant, Jones, from showing their true value; much less his co-defendants, who were in no way connected with it. An estoppel *in pais* happens where a party makes a statement, or admission, either expressly, or by implication, with the intention of influencing the conduct of another, and that other acts upon the confidence of such statement or admission, and will suffer injury if the party is permitted to deny it. In what way did the appraisal made by Jones influence the conduct of the plaintiff, or how could he have been injured by his being allowed to gainsay it? The plaintiff was an utter stranger to it, and could in no way have been influenced by it. It would be strange indeed if persons called upon and compelled by law to act as appraisers, under such circumstances, should afterwards, in an action against them for wrongfully intermeddling with the goods, be held liable to pay twice or three times the value of the goods appraised, as a penalty for an honest, but erroneous exercise of judgment, and still more strange, if all others jointly liable with them in the action should likewise be liable for the same penalty.

The judgment of the circuit court must be reversed, and a new trial awarded.