## BATES and others vs. SIMMONS, Garnishee, etc.

*December 17, 1884 — January 13, 1885.*

VOLUNTARY ASSIGNMENT.    *(1, 2) Fraudulent preferences: Ruling upon evidence construed.   (3) Preferences made in anticipation of legislative prohibition.   (4) Form of assignment.   (5) Form of assignee's bond.   (6) Affidavit to list of creditors: Clerical mistake. (7) Assignor acting as employee of assignee.   (8) Reservation of exempt property: Uncertainty.*

1. The question being as to the validity of a voluntary assignment, a remark of the court, made in excluding certain evidence, that "the intent to defraud would only be determined from a preference of creditors who had no claim, or beyond a just claim, against the assignor," is *held*, under the circumstances, to have meant merely that an intent to defraud creditors could not be inferred from the mere fact that a general assignment had been made by an insolvent debtor·for the benefit of his creditors. nor from the mere fact that some creditors had been preferred therein.

2. The mere fact that some of the debts preferred had previously been secured by mortgage on the real estate of the assignor's wife, does not conclusively show fraudulent intent in such preference.

3. An assignment with preferences, made before the enactment of ch. 349, Laws of 1883, prohibiting such preferences, is not illegal merely because made in anticipation of the passage of that act.

4. An assignment to the assignee, "his heirs, executors, administrators, and assigns," instead of to "his successors and assigns," is usual and proper where the assignment includes real estate.

5. The bond of an assignee running to "A. E. R., clerk of the circuit court," etc., is in substantial compliance with sec. 1694, R. S., requiring it to be "executed to the clerk of the circuit court of the county, by his name of office, as obligee." The omission of the word "as" before "clerk" is immaterial.   See *McNair v. Rewey, post,* p. 167.

6. The affidavit to the list of creditors, under sec. 1697, R. S., began as follows: "J. C. W., being duly sworn, says: I am the assignor named in the voluntary assignment made . . . by deponent to M. W. S., assignee; that the above and foregoing is a correct list of *his* creditors," etc.   *Held,* that the use of the word "his," instead of "my," was an obvious clerical error and did not invalidate the assignment.   *Haben v. Harshaw,* 59 Wis. 403, distinguished.

7. The mere fact that after the assignment the assignor remained in the store as an employee under the supervision of the assignee, is not conclusive evidence of fraud in making the assignment.

8. An assignment purported to convey all the lands, goods, debts, property, effects, etc., of the assignor "except what are exempt to me by the laws of the state of Wisconsin, the same being more fully and particularly enumerated and described in an inventory thereof to be filed," etc. Such inventory of the property assigned was duly filed within ten days as required by law, and contained no reference to any reservation or exemption, but was sworn by the assignor to be a correct inventory of all his real estate, goods and chattels, rights, credits, effects, etc., "not by law exempt to him." *Held* that, construing the assignment and inventory together, there was no uncertainty in the description of the property assigned; and that the uncertainty, if any, which existed between the time of the commencement of the assignment and the completion thereof by the filing of the inventory, did not invalidate the assignment.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is thus stated by Mr. Justice CASSODAY:

"February 27, 1883, J. C. Whittelsey made an assignment for the benefit of his creditors to *M. W. Simmons*. The plaintiffs, having commenced an action against Whittelsey, did, May 10, 1883, summon the defendant, as garnishee, upon an affidavit made in behalf of the plaintiffs, to the effect that the affiant verily believed that the defendant *Simmons* was indebted to Whittelsey and had property, real and personal, in his possession, or under his control, belonging to Whittelsey, and that Whittelsey had no property liable to execution sufficient to satisfy the plaintiff's demand, and that such indebtedness or property was not by law exempt from execution, and that Whittelsey was indebted to the plaintiffs in the sum of $2,021 on contract, over and above all offsets.

"The garnishee appeared and answered, in effect setting up the assignment to him under ch. 80, R. S., and denying that he had then, or at the time of the service of the summons upon him, any property, etc., belonging to Whittelsey,

other than that which he held as such assignee, or that he was indebted to him in any sum whatever. The plaintiffs took issue upon this answer, and alleged, in effect, that the assignment was not made in good faith nor for a valuable consideration, but in trust for the use of Whittelsey, and was not accompanied by an immediate delivery, and was not followed by an actual and continued change of possession of the things sold and assigned, and was void as against the plaintiffs; that said transfer or assignment was made with the intent to hinder, delay, and defraud the plaintiffs and other creditors of Whittelsey; that it was void upon its face, and not executed as required by law.

"Upon the trial of that issue, the court found, in effect, that the allegations contained in the answer of the garnishee were true; that the assignment was made in good faith, in trust for the benefit of Whittelsey's creditors, was due and regular in form, and complied with all the requirements of the statutes, so as to render the same valid and legal; that at the time of the service of the garnishee summons, and at the time of his answering, he was not indebted to Whittelsey, and did not have in his possession nor under his control any property belonging to him, except such as he held in trust under and by virtue of the assignment; and upon all the issues the court found in favor of the garnishee.

"As conclusions of law, the court held that the assignment was legal, valid, and binding, and that the garnishee was not liable to the plaintiffs as such, but was entitled to judgment dismissing the garnishee proceedings upon the merits, with costs. From the judgment entered accordingly the plaintiffs appeal."

For the appellants the cause was submitted on the brief of *Weisbrod & Harshaw.* They contended, *inter alia*, that in its ruling upon the evidence the trial court virtually held that, no matter what the intent was, if the assignor owed the debts mentioned in his schedule and was insolvent, the

assignment is valid. This was error. Bump on Fraud. Conv. (3d ed.), 358, 371; *State v. Benoist*, 37 Mo. 500; *Ogden v. Peters*, 21 N. Y. 23; *Van Nest v. Yoe*, 1 Sandf. Ch. 4; *Knight v. Packer*, 12 N. J. Eq. 214. No schedule of the exempt property having been attached to the assignment there was an uncertainty in the property assigned and the reservation was fraudulent as giving the assignor the right at any time to withdraw a part of the goods assigned. *Kayser v. Heavenrich*, 5 Kan. 324; *Clark v. Robbins*, 8 id. 574; *Averill v. Lauchs*, 6 Barb. 470; *Sugg v. Tillman*, 2 Swan, 208; *Fowler v. Hunt*, 48 Wis. 345; *Goll v. Healy*, 61 Wis. 293; *Crow v. Ruby*, 5 Mo. 484. The words "clerk of the circuit court," etc., are simply *descriptio personæ*. *Klauber v. Charlton*, 45 Wis. 606.

*Geo. E. Sutherland*, for the respondent.

CASSODAY, J. It is claimed that the court excluded evidence which would have shown that the assignment was made with the intent to defraud creditors. The only question excluded was one put to the assignor as to how much board his daughter (one of the preferred creditors) was paying him. This clearly related to the time of the trial, which was more than a year after the assignment, and hence could have no bearing as to the intent with which the assignment was made, and was therefore properly excluded as immaterial. The result of this ruling was a colloquy between the court and counsel for the plaintiffs, in which the latter disclaimed all expectation of showing that any of the scheduled "creditors were not *bona fide* creditors," and the court, among other things, stated that "the intent to defraud would only be determined from a preference of creditors who had no claim, or beyond a just claim, against the assignor." This is urged as error. Assuming that an intent to defraud might have been inferred from some other fact or circumstance than a mere preference of a claim wholly or in part fictitious,

yet, in the case of a general assignment by an insolvent debtor, it would be so rare and exceptional that we think that that good faith always due to the court from counsel required the latter to disclose the nature of such exceptional fact or circumstance before it can be fairly claimed that the court intended to exclude evidence tending to prove it. From the whole colloquy we are inclined to think that the court merely intended to inform counsel that an intent to defraud creditors could not be inferred from the mere fact that a general assignment had been made by an insolvent debtor for the benefit of his creditors, nor from the mere fact that in such an assignment the assignor had preferred some of his creditors to others. This was undoubtedly the law. *Lord v. Devendorf*, 54 Wis. 496; *Ball v. Bowe*, 49 Wis. 495.

There was no evidence that any portion of any of the preferred debts were fictitious. The mere fact that some of the assignor's preferred debts had previously been secured by mortgage on his wife's real estate did not preclude the court from holding that there was no intent to defraud in giving such preference. 49 Wis. 498. Such preferred debt was, nevertheless, the debt of the assignor, and not the debt of his wife.

It is claimed that the assignment was intentionally made before the passage of the bill (ch. 349, Laws of 1883) then pending in the legislature forbidding preferences, so as to prevent the assignor's property from being equally distributed among his creditors under that act. The fact remains that, at the time of making the assignment, the assignor had the legal right of preferring some of his creditors to others. Having such right at the time, was he precluded from its exercise by his knowing that the legislature contemplated so changing the law as to make the act illegal? To answer in the affirmative would be giving effect to the law several weeks before its passage. On the contrary, a legal right,

exercised strictly in accordance with the law in force at the time, does not become illegal merely by purposely doing it then, instead of postponing its exercise to a time when the law will be changed so as to make it illegal. An illegal motive cannot justly be ascribed to the proper exercise of a legal right. Certainly, there is no lack of authority in support of the proposition. *South Royalton Bank v. Suffolk Bank*, 27 Vt. 505; *Heywood v. Tillson*, 75 Me. 225; *S. C.* 29 Alb. L. J. 27, and cases there cited.

It is claimed that the form of the assignment is peculiar, in that it is made to the assignee, "his heirs, executors, administrators, and assigns," instead of running to his successors and assigns. But this, instead of being a "peculiar" form of transfer, is the usual form where the assignment includes real estate. Burrill on Assignments, § 133. The *habendum* clause in such case is substantially the same. Id. § 140. The assignment is in this respect, as it may properly be, even if not essential, a deed of conveyance of the absolute title, with a declaration of trust. Id. § 127. There have been assignments made in separate instruments, and held valid. Id. § 128; *Norton v. Kearney*, 10 Wis. 443. The use of the words "heirs and assigns" was, undoubtedly, to give effect to the assignee's conveyance, although it may have been unnecessary. *Angell v. Rosenbury*, 12 Mich. 266. The contingency suggested as to the death of the assignee before the execution of the trust, leaving minor or nonresident heirs, is not here involved, and hence is not here considered.

It is claimed that the assignment is void because the assignee's bond runs to "A. E. Richter, clerk of the circuit court of the county of Fond du Lac," etc. This, we think, was a substantial compliance with the statute requiring it to be "executed to the clerk of the circuit court of the county, by his name of office, as obligee." Sec. 1694, R. S. The insertion of the word "as" before the word "clerk" might

have been a more apt expression, but its omission is of no more significance than the omission of the same word before "administrator" in a bond given by the latter; as to which it has been held that the omission is immaterial. *Kasson v. Estate of Brocker*, 47 Wis. 86.

The mere fact that the assignor's affidavit to the list of his creditors, required by sec. 1697, R. S., starts out in the first person, and then speaks of the "list of *his* creditors," in the language of the statute, instead of saying "*my* creditors," was at most a mere clerical error, obvious upon the face of the record. The section declares that "no mistake therein shall invalidate such assignment," and we are indisposed to enforce a literalism not required by the statute. *Steinlein v. Hulstead*, 52 Wis. 289. *Haben v. Harshaw*, 59 Wis. 403, cited by counsel, is clearly distinguishable. There the assignment mentioned two distinct classes of property, whereas the list and affidavit only referred to one, and hence it was held that, presumptively, the list was incorrect.

The mere fact that after the assignment the assignor remained in the store as an employee under the supervision of the assignee, was not conclusive evidence of fraud in the making of the assignment. *Hollister v. Loud*, 2 Mich. 309.

It is claimed that the assignment is void upon its face because it purports to assign all and singular the lands, goods, debts, property, effects, etc., of every description, belonging to the assignor, or in which he had any right or interest, "except what are exempt to me by the laws of the state of Wisconsin, the same being more fully and particularly enumerated and described in an inventory thereof to be filed," etc. Manifestly, the property thus to be "more fully and particularly enumerated and described" in the inventory was such as was thereby transferred and conveyed to the assignee, and not such exempt property as was therein excepted from the operation of the assignment. It is only

the property actually assigned of which any schedule is required to be made. The statute provides for no schedule or inventory being made of the exempt property, but only that which is transferred by the assignment. Such description of the property assigned in a schedule annexed to the assignment, and therein referred to, has always been the usual method whenever the property is considerable in amount, or consists of a variety of particulars. Burrill on Assignments, § 134. Such inventory, duly verified and certified, was here filed in the office of the clerk within ten days after the execution of the assignment, as required by the statute. Sec. 1697, R. S. The inventory so filed contains no reference to any reservation or exemption, and there is no description of any property therein specifically exempted by sec. 2982 or sec. 2983, R. S. In the assignor's affidavit, indorsed upon the inventory, he swears that it "is a correct and true inventory of all his real estate, chattels real, goods and chattels, rights, credits, moneys, effects, and assets of every name and nature *not by law exempt to him*." The assignee testified, in effect, that he received from Whittelsey the property so covered by the assignment, and none other.

From all this it would seem that here the assignor must first have set apart his exempt property, and then assigned the balance, and that only. Whether he in fact first so set apart his exempt property, and then assigned the balance, does not expressly appear. Certainly, he makes no claim to any of the property enumerated and described in the inventory. On the contrary, in his affidavit referred to he expressly disclaims any right to any part of it. True, the inventory was not filed at the very time of filing of the paper purporting to transfer the property, yet it was filed within the time required by the statute. It was obviously the design of the statute that the title of the property should pass to the assignee immediately upon the execution of the

assignment, without inventory or list, as at common law, subject to be defeated by failure to comply with the condition subsequent, however, requiring the filing of such inventory and list. *Furwell v. Gundry*, 52 Wis. 271. The filing of such inventory is, however, an essential part of the assignment, which is incomplete without it, and it is the part in which the more full and particular enumeration and description of the assigned property is to be found. Sec. 1697. For a description of the property assigned, therefore, the inventory and assignment may be read together as one paper. So, if there was any uncertainty in the description of the property assigned, during the few days intervening between the filing of the paper purporting to assign the property, and the completion of the assignment by filing the inventory, yet, when the inventory was in fact filed within the time and as prescribed by statute, then all uncertainty vanished. *Strong v. Carrier*, 17 Conn. 330; *Raymond's Appeal*, 28 Conn. 47; *Woodward v. Marshall*, 22 Pick. 468; *Clap v. Smith*, 16 Pick. 247. Such uncertainty, during such intervening time between the commencement and completion of the assignment, if it existed, did not of itself invalidate, nor in any way frustrate, the operation of the assignment, for the statute expressly gave the ten days within which to so complete the assignment by filing an accurate, verified, and certified description of the property. Sec. 1697, R. S.

The case here presented, therefore, is wholly unlike that class of cases where there is an absolute transfer of a quantity of goods, with a reserved right of retaking and withdrawing from the bulk of the property so transferred a certain amount in value of unselected and unascertained goods. It is barely possible that the assignor here never, in fact, selected nor set apart the $200 stock in trade which he was entitled to as exempt under the statute. Subd. 8, sec. 2982, R. S. If this were so, then his failure to so select or set apart before the completion of the assignment and the

delivery of the property to the assignee, was a waiver of all claim to subsequently exercise such right. This is directly held in *Raymond's Appeal*, 28 Conn. 47. The same principle was applied by this court in *Zielke v. Morgan*, 50 Wis. 560, where a stock of goods was taken in execution, and it was held that to make such exemption available it must be claimed, and the articles selected by the debtor, at the time of the levy, or within a reasonable time thereafter, or such claim is waived. Whether a different rule would apply, in the case of assignments, to such articles as are specifically exempted, or where the whole stock does not exceed the exemption, as there suggested, need not be here considered, as no such articles appear upon the inventory. We must hold that the assignment before us is not void by reason of the exemption clause in question. *First Nat. Bank v. Hackett*, 61 Wis. 335, and cases there cited; *Goll v. Hubbell*, 61 Wis. 293. See, also, *Raymond's Appeal*, 28 Conn. 47; *Strong v. Carrier, supra; Clark v. Mix*, 15 Conn. 177; *Woodward v. Marshall, supra; Clap v. Smith, supra; Hollister v. Loud*, 2 Mich. 309, 322, 323; *Smith v. Mitchell*, 12 Mich. 180.

*By the Court.*—The judgment of the circuit court is affirmed.

Lyon, J., took no part.

<hr>

