HARDCASTLE *et al.*, Plaintiffs in Error, v. FISHER *et al.*, GARNISHEES OF MUDGETT & JAMES, Defendants in Error.

1. The omission of an assignee, in the case of a voluntary assignment for the benefit of creditors, under the act concerning voluntary assignments (R. C. 1845, p. 127), to file an inventory, give security, or to discharge any other duty imposed by said act, can not destroy the rights of the creditors under the assignment.

2. Although it may be attempted by an assignment for the benefit of creditors to secure one or more fictitious and fraudulent claims, neither the assignee nor the other creditors being cognizant of the fraud, this will not render the assignment ineffectual in favor of such other creditors; the assignment will in such case be held void as against the fraudulent claimant, and good in favor of the honest creditors.

3. The effect of impeaching such a claim by reason of fraud is that the share of the fund, that would otherwise be appropriated to its payment, sinks into the residue for the benefit of those creditors who are entitled to the residue by the terms of the deed of assignment; an attaching creditor, who summons the trustees as garnishees, can not be allowed to stand in the place of the excluded claimant and take his share of the fund.

*Error to St. Louis Court of Common Pleas.*

On the 1st of October, 1853, plaintiffs commenced a suit by attachment against Mudgett & James, averring in their affida-

vit, as grounds for the attachment, that the defendants had fraudulently conveyed and assigned their property and effects so as to hinder and delay their creditors. In the month of October, 1853, the respondents were summoned as garnishees of said Mudgett & James. At the return term of the writ, Mudgett & James filed a plea in abatement to the affidavit for the attachment, and afterwards, in February, 1856, on a trial before a jury, the issue made by the plea in abatement was found for the plaintiffs. On the 1st of March, 1856, the plaintiffs, by leave of court, filed amended allegations and interrogatories against the defendants, as garnishees of Mudgett & James, in substance as follows : That Mudgett & James were partners, doing business as dry goods merchants in the city of St. Louis, from January, 1850, until 27th September, 1853 ; that they had contracted partnership debts for goods, wares and merchandise to the amount of $60,000, up to 29th September, 1853 ; that they then had, in tangible stock and property, about $40,000 in value ; that Mudgett & James, designing to cheat and defraud certain of their creditors, made a deed of trust dated 27th September, 1853, and thereby conveyed all their said tangible property and their notes and accounts to defendants in this case, Hickman and Fisher. The allegations set out at length the said deed to the defendants. This deed, dated 27th September, 1853, acknowledged and duly recorded on the next day, was made by Mudgett & James to the defendants as parties of the second part, and Morris L. Holland & Co., William Mudgett, jr., of Rochester, Mrs. Elizabeth C. Chadwick, the plaintiffs, and many other persons as parties of the third part, in consideration of the debts and trusts therein named, and ten dollars paid to Mudgett & James by defendants. It conveyed, transferred and sold to the defendants all the goods of Mudgett & James, the fixtures in the store-room, their unexpired lease, all evidences of debt, accounts, &c., and insurance stock, in trust, to pay the debts therein named and expenses of the trust, in the order and according to the classification

mentioned. The trustees were required to take immediate possession of every thing conveyed, and were authorized to dispose of the merchandise in the usual manner, by sale, at retail or otherwise, as might seem to them best for the interest of the beneficiaries. Whatever remained undisposed of on the 15th of March, 1854, the trustees were required (unless in their opinion it was proper to do so sooner) to advertise for thirty days, and sell at auction, on these terms : for all sales under fifty dollars, cash, and for sums over that amount a credit of sixty days, secured by negotiable notes, with approved endorsers. The deed was also signed by Hickman and Fisher. The plaintiffs, in their allegations, further alleged that upon the execution of said deed, a formal delivery of the possession of the goods in the store of Mudgett & James was made to the garnishees, and the garnishees immediately employed Mudgett & James to act as their clerks and agents to take an account of stock, and to sell off the goods, wares and merchandise conveyed by said deed ; that Mudgett & James, being so employed, proceeded to sell said merchandise at their old stand for about four and a half months, for cash and upon credit, the proceeds of which sales were regularly paid to said Hickman and Fisher ; that Hickman and Fisher knew nothing of the fraudulent design of Mudgett & James, and that they have no other right, title, claim or property in the said goods, credits and effects transferred to them by Mudgett & James than they acquired by said deed ; that the deed was executed and delivered by Mudgett & James, then being in failing circumstances, with the intent to hinder, delay and defraud their then existing creditors, among whom were the plaintiffs in this writ, by providing therein for the fraudulent preference and payment out of said property and effects of the debts, alleged to be fraudulent, of Charles Miller for $1515, of Wm. Mudgett for $12,655, and of Elizabeth Chadwick for $3187, as preferred claims, to be paid before the payment of the principal part of their partnership debts subsequently named in said deed ; that the demands

of Miller, Mudgett and Chadwick were and are fraudulent and void, and not due or owing by Mudgett & James in whole or in part; that the plaintiff never assented to said deed; that Hickman and Fisher never filed any inventory, nor gave any bond, nor did any act required by the act of the general assembly concerning voluntary assignments, nor in any way treated said deed, or the property therein conveyed, as within the provisions of said act.

The garnishees demurred to the allegations and interrogatories, and the demurrer was sustained.

*B. A. Hill, Krum & Harding* and *J. R. Shepley*, for plaintiffs in error.

I. The instrument in which Hickman and Fisher were trustees is not of that class of conveyances included to be provided for by the act concerning assignments.

II. Even if the instrument is within the description mentioned in the first section of the assignment act, yet as the parties to it have never treated it as such, and said trustees have never performed any of the requirements of that act, they can not invoke the aid of that act to prevent a recovery.

III. At least the plaintiffs are entitled to recover from the garnishees so much of the funds in their hands as would have come by the provisions of the conveyance into the hands of the fraudulent creditors.

*Glover & Richardson*, for defendants in error.

I. The deed was supported by a valuable consideration. (Gates v. Labeaume, 19 Mo. 27; Halsey v. Whitney, 4 Mason, 214; Lawrence v. Davis, 3 McLean, 178; Burrill on Assignments, 219.)

II. The deed in this case is in all essential particulars like the deed of Claverdetscher directly in question in the case of Gates v. Labeaume, 19 Mo. 17.

III. The plaintiffs having conceded that the trustees were ignorant of any fraudulent intent on the part of Mudgett & James, and the deed having been made for a valuable consi-

deration in law, the fraud of the grantors can not be imputed to the grantors, and they were not liable to the process of garnishment.

IV. The other creditors named in the deed whose demands were not assailed, had an interest in the deed being sustained, and their rights ought not to be prejudiced by the fraudulent purpose of Mudgett & James in re erence to any other persons not real creditors.

V. If the deed was valid and operative when it was executed and delivered, its character could not be changed afterwards by any act of the makers or the trustees. On the delivery of the deed, the beneficiaries in it acquired rights which neither the grantors or grantees could affect, and neither their acts nor omissions could disturb rights already vested. (10 Mo. 27 ; Burrill on Assignments, 401.)

VI. There is nothing in the argument that the assignees did not comply with the requisitions of the law after they accepted the trust. (See sections 23 and 24.)

LEONARD, Judge, delivered the opinion of the court.

1. The deed falls within the provisions of our act concerning voluntary assignments, and we must treat it as such in determining the present controversy. The omission of the assignee to file an inventory and give security, or to discharge any other duty imposed upon him by the statute, can not affect the rights of the creditors ; and we are not at liberty, from any thing now before us, to presume that the creditors themselves have abandoned the assignment, and left the property embraced in it to be the subject of a general scramble among the creditors.

2. Three of the supposed debts provided for in the deed, and which were to be paid first and in preference to the great mass of the debts, are admitted by the demurrer to be fictitious claims fraudulently put into the assignment by the contrivance

of the grantor and these supposed creditors, but without the concurrence or knowledge of the assignees or the other creditors. We think it pretty well settled by the course f decision in this state in reference to a voluntary assignment, that the fraud of one or more of the creditors does not defeat it altogether and render it wholly ineffectual in favor of the others; and we are not disposed, after reconsidering the matter, to change the course of adjudication upon this subject. The courts of Virginia, North Carolina and Alabama have taken the same view; (Anderson v. Hooks, 9 Ala. 704; Sewall v. Henry, 5 Grattan, 31; Harris v. Graffenreed, 11 Iredell, 89; Brannock v. Brannock, 10 Ib. 428;) but in New York, the old rule—void in part, void in toto—seems to be adhered to and applied to these transactions. (Fiedler v. Day, 2 Sand. Sup. C. R. 596.) We think it, however, the part of wisdom, since the legislature have interfered in reference to these assignments, to uphold them, rather than to defeat them by lending too easy an ear to objections; and that the better way to render them effectual in securing the effects of insolvent debtors to their creditors, will be to exclude the fraudulent claimant from any participation in the fund, by holding the assignment void as to him, and letting it stand in favor of honest parties.

2. The attaching creditor, however, can not be allowed to stand in the place of the excluded claimant, and take his share of the fund. There is no legal principle upon which we can allow this. The impeached claim is extinguished by the fraud, so far as any participation in the assigned effects is concerned, and the effect of this in reference to the other creditors is, that the share, that would otherwise have been appropriated to its payment, sinks into the residue for the benefit of those who are entitled to the residue by the terms of the deed. The other judges concurring, the judgment is affirmed.