LORD vs. DEVENDORF, imp.

*February 11 — March 14, 1882.*

GENERAL ASSIGNMENT: ATTACHMENT. *(1) What provisions in assignment invalidate it. (2) Assignment by one partner of his individual property. (3) Evidence of intent to defraud. (4) What attachment plaintiff must show on traverse of his affidavit. (5) Reversal of decision of court below, on weight of evidence.* ·

1. A provision in a general assignment for the benefit of creditors, that the assignee " shall, with all convenient diligence, sell and dispose of the property at public or private sale, as he may deem most beneficial to the interests of the creditors of [the assignor], and convert the same into money," does not authorize the assignee to sell on credit, and does not invalidate the assignment. *Hutchinson v. Lord*, 1 Wis., 294, and *Keep v. Sanderson*, 2 id., 42, distinguished.
2. One member of a firm may assign his individual property so as to prefer his individual creditors to the creditors of the firm.
3. An intent to defraud cannot be inferred from the mere fact ·that a debtor made a general assignment for the benefit of creditors, or that he preferred some of his creditors to others, or that he turned out property in payment of certain creditors after an attachment had been levied in favor of another creditor, and before executing his general assignment.
4. While an attachment issues on an affidavit of a proper person that he has good reason to believe certain facts, yet, on traverse of the affidavit, the attaching creditor has the burden of showing *those facts themselves.*
5. There was in this case no such clear preponderance of evidence against the finding of facts by the court below (in favor of the assignment) as would warrant this court in reversing the decision of that.

APPEAL from the Circuit Court for *Grant* County.

The defendants, *Devendorf* and Penn, being in partnership and doing business as merchants at Platteville, dissolved April

9, 1877; *Devendorf* purchasing of Penn the undivided one-half of the building wherein they were then doing business, for $3,000, which was secured to be paid by *Devendorf* assuming $1,000 of Penn's share of the incumbrances on the building, and giving Penn his notes for $2,000, secured by mortgage on the undivided one-half of the store building. *Devendorf* also purchased of Penn his undivided one-half of the stock of goods, wares and merchandise in their store, and the tools and stock in their tin shop, at the then present cost price, for which he paid $2,500 down, and for the balance gave his notes ·in installments of $500 each. The notes and accounts due the firm were left with *Devendorf* for collection, with Penn's assistance, and the proceeds were to be applied, as fast as collected, in the payment of the firm debts, until they should be fully paid, and then the balance was to be divided or otherwise disposed of as they should agree. They also made mutual transfers of certain other articles. *Devendorf* continued the business in the same store until March 15, 1880, when this suit was commenced to recover the amount of two notes executed by *Devendorf* and Penn, January 4, 1878, and an attachment was issued therein, and the stock of goods in the store of *Devendorf* taken thereon. March 16, 1880, being the next day after the levy of the attachment, *Devendorf* made a general assignment for the benefit of his creditors, of all and singular his property, real·and personal, and things in action (not exempt from execution); and the assignee therein was directed to sell the same and convert it into money, and out of the proceeds thereof (after paying reasonable expenses, costs, charges, and his own lawful compensation) to pay his debts in the order therein named; first, what are therein designated as class number 1; and second, what are therein designated as class number 2. The grounds stated in the affidavit for the attachment were, that the plaintiff had good reason to believe, and verily did believe, that *Devendorf* and Penn had assigned, conveyed or disposed of, or concealed, or were about to assign, **convey** or dispose of their property, with intent to defraud

their creditors, and that the plaintiff had good reason to believe, and verily did believe, that *Devendorf* had removed, or was about to remove, some of his property out of the state, with the intent to defraud his creditors. *Devendorf* and Penn severally traversed the affidavit for the writ, and on the trial by the court a large amount of testimony was taken, whereupon the court found for the defendants, and an order was entered accordingly. This was an appeal from so much of that order as vacated and dismissed said writ of attachment as to the defendant *Devendorf*.

For the appellant there were separate briefs by *Bell & Murphy* and *P. A. Orton*, and oral argument by *Mr. Bell* and *Mr. Orton*. They argued, among other things, that no dissolution of any kind affects the rights of firm creditors without their consent, and that all the joint property of the firm is just as liable for the joint debts after such dissolution or settlement among themselves as it was before. Parsons on Part., 395; Collyer on Part., § 121; *Menagh v. Whetwell*, 52 N. Y., 162–165. An assignment for the benefit of creditors, made by one of a late firm, is fraudulent and void *upon its face*, if it authorizes such a disposition to be made of the property conveyed, or of its proceeds, as will, if carried into effect, deprive the firm creditors of having the firm property applied to the payment of their claims. Burrill on Assignments, §§ 338–351; *Jackson v. Cornell*, 1 Sandf. Ch., 354; *Wilson v. Robertson*, 21 N. Y., 587–591; *Lester v. Abbott*, 28 How. Pr., 488; *Johnson v. Thweatt*, 18 Ala., 744; *Jenners v. Doe*, 9 Ind., 464; *Goodrich v. Downs*, 6 Hill, 438; *Cunningham v. Freeborn*, 3 Paige, 557; *Dunham v. Waterman*, 17 N. Y., 9; *Green v. Trieber*, 3 Md., 39; *Inloes v. Am. Ex. Bank*, 11 id., 183; *Rosenberg v. Moore*, id., 380; *Johnson v. McAllister's Assignee*, 30 Mo., 327. *Devendorf* delivered not only his individual assets, but all of the firm assets in his possession or under his control, to the assignee, absolutely, for the purposes of the assignment. *Wyckoff v. Carr*, 8 Mich., 44; *Oliver v.*

*Eaton,* 7 id., 108; *State v. Benoist,* 37 Mo., 515; *Bigelow v. Stringer,* 40 id., 206. An assignment void in part as against the provisions of the statute, is void *in toto,* and no interest whatever passes to the assignee as against creditors who do not consent to it. *Wakeman v. Grover,* 4 Paige, 37; *Flanigan v. Lampman,* 12 Mich., 58; *Hathaway v. Brown,* 18 Minn., 425. As to whether the assignment authorized a sale of the property on credit, and was therefore void as tending directly to hinder and delay creditors, they cited *Norton v. Kearney,* 10 Wis., 443; *Keep v. Sanderson,* 12 id., 352.

For the respondent *Devendorf* there was a brief by *Carter & Cleary,* and oral argument by *Mr. Carter.*

CASSODAY, J. In our opinion the assignment is not void upon its face by reason of the following clause: "shall, with all convenient diligence, sell and dispose of the same at public or private sale, as he may deem most beneficial to the interests of the creditors of said party of the first part, and convert the same into money."

In *Hutchinson v. Lord,* 1 Wis., 294, the particular words which rendered the assignment void were: "In such manner, either at public or private sale, *and upon such terms and for such prices,* as to the said party of the second part shall seem advisable;" and those which further expressly exempted the assignee from all liability, "*while acting in good faith.*" The court in that case put particular stress upon the words in italics.

In *Keep v. Sanderson,* 2 Wis., 42, the words which avoided the assignment were: "To sell and dispose of the assigned property *upon such terms and conditions* as in their judgment may appear best and most to the interest of the parties concerned."

In *Norton v. Kearney,* 10 Wis., 443, it was held that "an assignment in which the assignee is ' to dispose of the property to the best advantage, in his discretion,' is valid, and does not

imply an authority to sell on credit." Dixon, C. J., distinguishing that case from *Hutchinson v. Lord* and *Keep v. Sanderson, supra,* said: "We are of the opinion that the discretion here vested must be understood as a legal discretion; that is, a discretion to be exercised within the limits which the law fixes in such cases. There is ample room for the exercise of this discretion without transcending any rule of law." The second case of *Keep v. Sanderson,* 12 Wis., 352, turned upon the same language as the first, and was decided the same way, and the opinion clearly distinguishes it from *Norton v. Kearney.* The above cases are harmonized by Ryan, C. J., in his dissenting opinion in *Bound v. Railroad Co.,* 45 Wis., 574, 575.

In the case before us there is nothing said about "terms and conditions," nor "prices," but the assignee is required to sell and dispose of the property and convert the same into money with all convenient diligence, and such sale and disposition is to be "at public or private sale," as he may deem most beneficial. The thing thus left to his discretion is, whether he will sell at *public* or *private sale,* and not whether he will sell for cash, or on credit or otherwise. The assignment does not purport to cover the property of the old firm of Devendorf & Penn, but only the property of *Devendorf.* It is true that the accounts and debts due the old firm were, subsequently to the assignment, scheduled in Exhibit D, but no such exhibit appears to be referred to in the assignment. Whether the assignee can take any interest in the assets of the old firm to the prejudice of the creditors of the old firm, is a question not here presented, as no such assets appear to have been attached. It would seem that "the rule of equity is uniform and stringent, that the partnership property of a firm shall all be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm, and that the creditors of the latter are to be first paid out of the separate effects of their debtor, before the partnership creditors

can claim anything." *Jackson v. Cornell*, 1 Sandf. Ch., 348. See also *Kirby v. Schoonmaker*, 3 Barb. Ch., 46; *Nicholson v. Leavitt*, 4 Sandf. S. C., 307; *S. C.* reversed, 2 Selden, 510; *Wilson v. Robertson*, 21 N. Y., 587; *Forbes v. Scannell*, 13 Cal., 242; *Nye v. Van Husan*, 6 Mich., 329.

The mere fact that there were firm assets and firm creditors did not, however, prevent *Devendorf* from assigning *his* property and preferring his individual creditors to the firm creditors. In the absence of any statute to the contrary, there can be no question but that an insolvent debtor may pay one creditor in money or property in preference to another. *Spring v. Ins. Co.*, 8 Wheaton, 268. This right of the debtor to prefer results from the absolute ownership of property. *Brashear v. West*, 7 Pet., 608. This absolute ownership implies the absolute right of disposition. In the absence of the bankrupt law or any statute to the contrary, there can be no doubt but that an insolvent debtor, when assigning his property for the benefit of his creditors, may, in good faith, prefer one or more to others. Such being the law, it follows that an intent to defraud cannot be inferred from the mere fact of *Devendorf* making a general assignment for the benefit of his creditors, nor from the mere fact that in such assignment he preferred some of his creditors to others, nor from the mere fact that he turned out property in payment of certain of his creditors after the levy of the attachment and before the execution of the assignment. Section 2731, R. S., authorizes a writ of attachment to issue, even though the plaintiff or person making the affidavit in his behalf only had "good reason to believe" one of the things therein mentioned; but where it is traversed, and the same is tried by the court under sections 2745–6, R. S., the affirmative of the issue is upon the plaintiff. In such a case, the finding of the circuit court against the plaintiff as to the existence of the fact itself will not be disturbed unless there is a clear preponderance of the evidence against it. *Rice v. Jerenson*, ante, p. 248; *Davidson v. Hackett*, 49 Wis., 186.

Such being the established rule of law, it only remains for us to consider whether there is such clear preponderance of evidence in this case. True, it appears from the evidence that *Devendorf* put off the plaintiff's attorney from day to day for some weeks by mere promises, which it would seem he had little or no expectation, and probably no present capacity, of fulfilling; but that of itself does not establish fraud. So it appears that he had for some months prior to the assignment contemplated going to the Red river country, in Dakota, and there going into farming, and that he had for that purpose acquired several horses and other property suited to the business. If at the time he fully comprehended and properly appreciated the amount of his indebtedness, and the real value of his property, it is difficult to perceive how he could expect to pacify his creditors sufficiently to make such a change without their interference. True, the mere change of locality would not of itself establish an intent to defraud, although it might be a circumstance strongly tending to evince a purpose to hinder and delay creditors in the collection of their debts; and if it had been shown in addition that the purpose was to take advantage of more liberal exemption laws, and to convert property not exempt into property which was exempt, the inference of the intent to defraud his creditors would be irresistible. But such is not the evidence. Besides, the purpose of going to the Red river country was no secret; on the contrary, it had for several months been talked about by *Devendorf* in the store, and frequently in the presence of large numbers of the citizens of Platteville, and must have been generally known in the neighborhood. The more charitable view would be that *Devendorf* was inefficient as a business manager, and, having good credit, heedlessly, and without comprehending his true financial circumstances, allowed himself to drift into the condition in which he was subsequently found. Whatever may be the real motive, we are constrained to hold that there is not such a clear prepon-

derance of the evidence of an intent on the part of *Devendorf* to defraud his creditors as would warrant this. court, under the rule already established, to reverse the order and set aside the finding of the court below.

*By the Court.*— The order of the circuit court is affirmed.