Robert Douglass et al., Appellants, v. John W. Cissna, Respondent.

### March 23, 1885.

1. Practice.—The habit of multiplying instructions animadverted upon.

2. Attachment Act—Grounds for Attachment—Construction of.— Under the seventh clause, or subdivision, of section 398 of the Attachment act of this state (Revised Statutes), if a deed of conveyance or assignment of property or effects is, in and of itself, fraudulent, it would be as matter of law, a fraudulent conveyance or assignment, within the meaning of such section, and would support that allegation of the affidavit, in a suit under it. The intent, the motive which prompted the conveyance or assignment (in the absence of a secret trust, or understanding *dehors* the instrument), could have no effect; it is the *legal* effect of the deed which makes it valid or fraudulent. The *intent* is only applied to the instances under the *fifth and sixth* clauses of

said section 398, concerning attachments.—See *Reid* v. *Pelletier*, 28 Mo. 177; *Bullene* v. *Smith*, 73 Mo. 151.

3. SAME—FURTHER CONSTRUCTION OF.—Each of the several clauses of said section 398, Revised Statutes, presents a separate, distinct, and independent ground of attachment. The legislature did not employ the several specified grounds as convertible terms. Each enumeration constitutes a cause of action, and each of the terms employed possesses its own peculiar meaning and office in law. Therefore a fraudulent *disposition of property* will not support a charge of a fraudulent *conveyance* or *assignment*, and *vice versa*. Following *Bullene* v. *Smith*, 73 Mo. 151.

4. ASSIGNMENT—DEED OF—PROVISION AS TO SURPLUS.—Where a deed in the nature of a deed of assignment contains a provision that any surplus remaining after the satisfaction of the grantor's debts should be returned or paid to him; this cannot be held to be a fraudulent reservation to his use as against creditors, for that is precisely what the law, in the absence of any such stipulation, would direct.—Burrill on Assignments, 4th ed. sects. 206, 207.

5. SAME—IF FOR THE BENEFIT OF CREDITORS GENERALLY, NOT SUBJECT TO PROCEEDINGS UNDER ATTACHMENT ACT.—If, as matter of law, the effect and operation of a deed constitutes an assignment for the benefit of creditors generally, *pari passu*, it is difficult to conceive how it can be said that the assignment was fraudulent so as to hinder, or delay, the creditors. The law, on the contrary, favors such assignments, as they operate for the protection and equality of all the creditors.—*Hilliken* v. *Dart*, 26 Hun. (N. Y.) 24.

6. SAME—DELAY IN MAKING STATEMENT REQUIRED BY ASSIGNMENT ACT —EFFECT OF.—A failure to make a statement at the time of executing the assignment and accompanying it, as contemplated by the statute (Rev. Stat. sect. 362), will not defeat the conveyance in favor of creditors, as they had no control over the assignor in performing a duty imposed on him by the statute, after the making of the deed.—*Hardcastle* v. *Fisher*, 24 Mo. 70; *Duvall* v. *Raisin*, 7 Mo. 499; *Robert* v. *Casey*, 25 Mo. 590.

ON REHEARING:

7. SAME—PARTIES TO—ACCEPTANCE OF TRUST.—An assignment for the benefit of creditors may be made to a single individual, or to several. And when it is made to several, it is not essential to its validity that all should accept. Only those who do accept are required to act. An assignment to partners is good and the acceptance of the trust by one of the firm is sufficient.— Burrill on Assignments, sect. 91, 4th ed.; *Forbes* v. *Scannel*, 13 Cal. 243 *et seq.* The delivery of the deed and putting it on record is an acceptance, and the deed becomes operative at once, and the assignee being in possession of the assigned property, the deed would prevail over any process intervening between that date and the giving of the bond by the assignee. The assignee may have

the time allowed him by law in which to qualify. No act or word of either the assignor or assignee, subsequent to the delivery of the deed, can, without the consent of the creditors, in any wise, affect the validity and operation of the conveyance.—*Union Bk.* v. *Bk. Commerce*, 94 Ill. 27; *Gates* v. *Lebeaume*, 19 Mo. 27; *Valentine* v. *Decker*, 43 Mo. 544.

APPEAL from Nodaway Circuit Court, HON. H. S. KELLEY, Judge.

*Affirmed.*

*Motion for rehearing denied.*

Statement of case by the court.

This is an action of attachment. The affidavit for the writ is as follows:

"This affiant states that the plaintiffs in the above entitled cause have a just demand against the defendant herein, all past due, except $55.10, and that the amount which this affiant believes the plaintiffs ought to recover, after allowing all just credits and set-offs, is two hundred and eighty-five dollars and nineteen cents, and that this affiant has good reason to believe, and does believe, that the defendant has fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors. That defendant is about to fraudulently convey and assign his property and effects so as to hinder and delay his creditors. That the defendant has fraudulently concealed, removed, and disposed of his property and effects so as to hinder and delay his creditors, and that he is about to so conceal, remove, and dispose of his property and effects."

The action grew out of the following state of facts:

The defendant, in 1881, was merchandizing at the town of Clearmont, in Nodaway county. He owed, according to the evidence, the 1st of December, debts unsecured amounting to about $5000.00. His stock of goods and other assets amounted to about $6000.00, by rough estimate. His principal creditor was the firm of Tootle, Hosea & Co., of St. Joseph. Being behind with his payments, his creditors began to press him with their demands. On or about the 3rd day of December, C. W.

Campbell, of the firm of Tootle, Hosea & Co., visited the defendant, and urged him to secure their claim in some way. The result of which was, that on the 5th of December, Cissna agreed to execute to Tootle, Hosea & Co., the following instrument:

"This indenture made and entered into this fifth day of December, 1881, by and between John W. Cissna, of the town of Clearmont, Nodaway Co., Missouri, and Tootle, Hosea & Co., said firm composed of Milton Tootle, Wm. E. Hosea, Chas. W. Campbell, W. W. Wheeler, and Joshua Motter, of the city of St. Joseph, Missouri. Witnesseth: That the said Jno. W. Cissna, being justly indebted to said Tootle, Hosea & Co., in the sum of $1,988.40, embraced in two notes as follows: One note dated July 20th, 1881, for $1,061.73, and bearing 10 per cent. interest from date, and one note dated December 3d, 1881, for $887.43, bearing 10 per cent. interest from date—$1,988.40. Now, for the purpose of discharging said obligation and paying said notes in full, which are herein acknowledged just and due, and for the further consideration of one dollar in hand paid, which is hereby acknowledged receipt of, I, J. W. Cissna, do bargain and sell and convey to Tootle, Hosea & Co., of Saint Joseph, Mo., and do give possession this day of my entire stock of dry goods, groceries, queensware, boots and shoes, hats and caps, and all other goods and furniture contained in my two-story frame store building, situated upon lot (2), block (2), in the town of Clearmont, Nodaway Co., Mo., or so much thereof as will pay and satisfy in full the aforementioned notes given to Tootle, Hosea & Co. for goods purchased of them. This sale is made to Tootle, Hosea & Co., for the express purpose of 1st, to pay Tootle, Hosea & Co. in full the sum of $1,988.40 and interest, and the residue, after being carefully disposed of by said Tootle, Hosea & Co., shall be divided *pro rata* between my creditors, as follows, as their claims may appear: Schuster, Tootle & Co., $800; Patterson, Noyes & Co., $278; D. M. Steele & Co., $750; Nave, McCord & Co., $200; V. B. Buck & Co., $300; S.

Lockwood & Co., $500 ; and for the further satisfaction of all my creditors, if any there be whose names are not here set forth, I transfer to Tootle, Hosea & Co. all my book accounts and notes to collect and distribute *pro rata* as claims may appear.   In consideration of the sale and transfer, and possession as above made, the said Tootle, Hosea & Co. agree to bind themselves to correctly invoice said stock of goods and furniture at cost for such as are worth it, and all such as are depreciated at value, and to sell the same to the very best advantage and interest of all concerned, and first pay themselves the amount of their notes and interest, as stated, and then distribute *pro rata* to each and every creditor of J. W. Cissna, whether above named or not.   The said Tootle, Hosea & Co. further agree to schedule all the notes and accounts of Jno. W. Cissna, and use all due diligence in the collection of them, and pay the proceeds of said collection, after their notes are paid, to each and every creditor *pro rata*.   The said Tootle, Hosea & Co. agree to use all mercantile care and diligence in the sale of the above named goods, and in the collection of the said notes and accounts, and upon the demand of any of the aforementioned creditors, or other creditors, of J. W. Cissna, after said Tootle, Hosea & Co. have received their pay in full, to turn over all residue of cash, merchandise, notes or accounts to whomsoever a majority of the aforementioned creditors, and my other creditors, if omitted in said mention, may elect, they agreeing to dispose of all balances as before mentioned, *pro rata*, and any residue after paying all my creditors, shall be paid over to John W. Cissna, or his assigns.   It is further agreed and understood between J. W. Cissna and Tootle, Hosea & Co., that all legitimate expenses attending the sale of goods and collection of notes and accounts should be paid out of the proceeds of the sale of said goods and the collection of said notes and accounts ; and should the amount due each creditor be incorrectly given, or should any creditor's name be omitted given, it is understood they shall share *pro rata*, as their claims may appear,

it being the object of J. W. Cissna to pay all of his creditors in full if possible.

Witness our hands and seals, this 5th day of December, 1881."

On the 6th of December, the foregoing instrument was duly executed, acknowledged and put to record the same day; and Campbell took immediate possession of the goods. By this time other creditors appeared upon the scene, among them the plaintiffs, who urged the defendant to provide for all his creditors equally. Some of these deferred creditors claim that Cissna and Campbell both represented to them that the goods had been sold to Tootle, Hosea & Co.; but a copy of the deed was exhibited to them by defendant. The plaintiffs failing to secure their claim, instituted this attachment suit on the same day of the execution of the deed, but subsequent thereto.

On the trial of the issues, made up on the plea in abatement, much evidence was introduced by plaintiffs showing the history of the transaction in question, and endeavoring chiefly to show that the defendant's object in making said deed was to prefer Tootle, Hosea & Co., and defer the other creditors to secure to himself an advantage. Among other facts developed on the trial was the following telegram sent Campbell from his house in St. Joseph:

"Dated St. Joe, Mo., Dec. 6, 1881.

Received at Clearmont, Mo., at 5:50 P. M.

To C. W. Campbell,—

Judson says to make the sale good, you must buy the stock and accounts for a specific amount.

TOOTLE, HOSEA & CO."

This was after the said deed was executed and filed for record. It seems that on the receipt of this telegram, Campbell drew up and had Cissna sign the following paper:

"CLEARMONT, Mo., December 6, 1881.

For and in consideration of the sum of two thousand dollars, to me in hand paid, the receipt of which is

herein acknowledged, I sell my stock of dry goods, groceries, queensware, boots, shoes, hats and caps, and store furniture contained in the two-story frame building situate on lot (2), block (2), town of Clearmont, formerly occupied by me. Also all my books and accounts, and deliver the same to Tootle, Hosea & Co., sixth day of December, 1881, to have and to hold for their exclusive benefit.

JOHN W. CISSNA.

W. G. Craig, witness."

This paper had the following endorsement on the back:

"CLEARMONT, Mo., December 6th, 1881.

The object of this bill of sale, as named within, is not to deprive any creditor of their *pro rata* division, but to more absolutely confirm the sale of December 5th to Tootle, Hosea & Co., for the purpose named in said sale. They agreeing to carry it out in all its provisions, and make the *pro rata* division as provided for in said sale, after receiving their pay in full.

J. W. CISSNA,
TOOTLE, HOSEA & Co.

Witness, W. G. Craig."

Whether this endorsement was made at the instant of the execution of the bill of sale or shortly thereafter, was affirmed by the one party, and denied or questioned by the other.

There was no evidence tending to show any secret arrangement between the defendant and Campbell, by which any property was concealed or otherwise disposed of than is expressed on the face of the deed. There was a statement of defendant, to the effect that he expected Tootle, Hosea & Co. to put other goods or buy other goods to keep up stock so as the better to sell the goods transferred; and that his purpose in making the deed was to give Tootle, Hosea & Co. a preference, and that the other creditors were not to be paid until T., H. & Co.'s debt was satisfied. But his evidence tended strongly to show that his purpose was to have his prop-

erty. held to the payment of all his debts, and that he did not expect any returns to himself out of the property conveyed until after the satisfaction of all of his creditors.

There was other evidence, but in view of the grounds upon which the opinion herein is placed, it is not deemed important to give it in detail.

The jury, after instructions from the court, returned a verdict for defendant, and judgment was entered accordingly; from which the plaintiffs prosecute this appeal.

STRONG & MOSMAN, and IRA K. ALDERMAN, for the appellants.

I. It is unnecessary to prove any combination or confederation between the maker and transferee to hinder or delay creditors. It is enough to show that an *intent* such as the statute prohibits, prompted the parties to make the transfer.—*Bengert* v. *Burchert*, 59 Mo. 80; *Werden* v. *Hawes*, 10 Conn. 50; *Stevens* v. *Chouteau*, 11 Mo. 383.

II. Under the statute this instrument was not a voluntary assignment for the benefit of creditors.—*Kellogg* v. *Richardson*, U. S. Dist. C., Apr. term, 1883; Federal Reporter, vol. 19, No. 2, Feb. 1884; *Potter* v. *McDowell*, 31 Mo. 62.

III. The court improperly refused the first, second and third instructions asked by plaintiffs. The intent to hinder, delay, and even to prevent seizure and sale of property by the creditors was admitted as the purpose of respondent. The fraud follows as matter of law. Hence the law, the evidence, and the weight of evidence, was disregarded by the verdict.

IV. The court excluded, by instruction, legal and competent evidence. Though the court admitted, during the trial, the conversations and acts of respondent, yet they were taken from the jury by so presenting abstract principles of law in instructions 10, 11 and 12 (page 50), that the jury were necessarily misled in giving to such evidence the proper consideration. The inference that a deed, valid on its face, cannot be conceived in fraud, or executed for an illegal purpose, is erroneous.—*Potter* v. *McDowell*, 31 Mo. 69; *Bengert* v. *Burchert*, 59 Mo. 83.

V. Respondent's intent to postpone plaintiffs in the collection of their debt was participated in by the assignees or transferees, and hence the plea of good faith on their part will not avail them or respondent anything. —*Crow* v. *Beardsley*, 68 Mo. 435 ; Bump on Fraud. Conveyances, 363.

VI. The following additional authorities are cited as sustaining appellants' theory of the whole case : *Pope* v. *Wilson*, 7 Ala. 699 ; *Green* v. *Tanner*, 8 Metc. (Mass.) 411 ; *Partete* v. *Harris*, 26 Conn. 480 ; *Bancroft* v. *Blizzard*, 13 Ohio 30 ; *Chouteau* v. *Sherman*, 11 Mo. 385 ; *Tripp* v. *Child*, 14 Barb. 85 ; *Goodrich* v. *Downs*, 6 Hill 483.

VII. The court erred in refusing judgment for plaintiffs after jury sworn and before evidence given, for reasons heretofore assigned touching the pleadings. Amendment without condition at this stage was error.

JOHNSTON & ANTHONY, with LAFE DAWSON,. for respondent.

I. There was no evidence tending to prove the second,. third and fourth charges in the affidavit. The sole issue remaining was : Did defendant fraudulently convey and assign his property and effects so as to delay and hinder his creditors ?

II. Whether the papers evidencing the transaction between defendant and Tootle, Hosea & Co. (or Campbell, one of that firm), bear upon their face evidence of fraud, it was for the court so to declare as matter of law, and not for the jury as matter of fact.—*McKay* v. *Underwood*, 47 Mo. 185 ; *Fangman* v. *Hersey*, 43 Mo. 122 ; *Rea* v. *Ferguson*, 72 Mo. 225 ; *Price et al.* v. *Evans*, 49 Mo. 396 ; *State* v. *Baber*, 74 Mo. 292 ; *Brooks* v. *Wimer*, 20 Mo. 503 ; *Bigelow* v. *Stringer*, 40 Mo. 195 ; *Robinson's Exrs.* v. *Robards*, 15 Mo. 459.

III. No evidence was excluded to which exception was saved. There was no admission of improper evidence.

IV. The assignment would not fail or be defeated by the fact of failure to file statement along with deed.— *Hardcastle* v. *Fisher*, 24 Mo. 70.

V. Instructions Nos. 1, 2, 3, 6, 7, 7½, 12, 13, 14, 15, 16, 17 (twelve altogether) were properly refused.

VI. Taken as a whole, the instructions for defendant placed the intent fairly before the jury, and as favorably to plaintiffs as the law would warrant. But plaintiffs failed to save exceptions to the giving of defendant's instructions.

VII. The amendment allowing the notary to affix his seal to a *jurat*, was properly permitted, before motion for judgment was determined. Pleas in abatement, like other pleadings, may be amended.—*Hamblin* v. *Dunn*, 53 Mo. 137; *Coyce* v. *Ragsdale*, 17 Mo. 32; *Jump* v. *Batton's Exrs.*, 35 Mo. 193.

VIII. The only fraud that will vitiate an assignment is fraud in its concoction. If there was no fraud in its inception, no subsequent conduct on the part of the assignee or assignor can avoid it, or render it null.— Bump on Fraud. Conveyances, 352 and cases; *Gates* v. *Lebeaume*, 19 Mo. 17; *Goodwin* v. *Kerr*, Mo. S. C. (not reported).

IX. The result of the whole transaction was this: An assignment of all his property for the equal benefit of all his creditors in equal proportion to their respective demands.—*Pike* v. *Bacon*, 21 Mo. 280; Bump on Fraud. Con. 347; *Horwith* v. *Ellinger*, 31 Md. 492; *Hoffman* v. *McAll*, 5 Ohio St. 124.

Opinion by PHILIPS, P. J.

In this case the plaintiffs asked twenty instructions, of which the court gave eight. The court also gave twelve instructions on behalf of defendant. We are asked in this case to review all those refused and those given. The habit of counsel in thus multiplying instructions, has time and again been animadverted upon and censured by the supreme court. But instead of curing the evil practice, it seems to be on the increase. If the court decline to accept the pressing invitation of counsel to look carefully and minutely through such a labyrinth of propositions to discover, if possible, some inconsistency

or incongruity as the basis of error, it must be understood that the court is satisfied that, taking the instructions altogether which the trial court gave, the issues were fairly presented, or that they are immaterial, and that our duty is to administer the law in the interest of justice.

The case seems to have been tried throughout by the plaintiffs on the theory that the motive and intent of the defendant in making the deed to Tootle, Hosea & Co. was the main issue, and so the instructions given by the court, as well as those refused, placed the case principally on the theory that if defendant intended to prefer one creditor to another, and to postpone one creditor until another was paid, etc., it was sufficient to maintain the attachment.

As, under the undisputed facts of record, the deed in question, whatever it may be called, had been made, and the real ground of controversy is as to the effect of the instrument, the inquiry should be limited to the seventh clause of section 398 of the Attachment act.

That inquiry is: Has the defendant fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors? If this deed was fraudulent in and of itself, as matter of law it would be a fraudulent conveyance or assignment within the meaning of said section. And if the judgment of the law denounced it as fraudulent, it would support that allegation of the affidavit.—*Reed* v. *Pelletier*, 28 Mo. 177.

The intent, the motive which prompted the conveyance or assignment, in the absence of a secret trust or understanding *dehors* the instrument, could have no effect, because the intent to defraud might have been entertained by the grantor and yet the legal effect of the deed make valid the conveyance, so that as matter of law it would and could not hinder or delay any creditor.

It is to be borne in mind that the intent, the motive of the grantor, is applied only to instances under the 5th and 6th clauses of said section concerning attachments. So Richardson, J., in *Reed* v. *Pelletier*, *supra*, said:

"There are thirteen cases in which an attachment may issue under our statute, and it will be observed that the 'intent' of the party liable to the writ is not a necessary ingredient except for the causes enumerated in the fifth and sixth clauses of the first section. The affidavit will be good if it follows the language of either of the clauses, and it is never necessary to prove more than the party is required to swear to. If the attachment is based on either the seventh, eighth, ninth, or tenth clauses, it will be sustained on proof that the defendant fraudulently had or was about fraudulently to do any of the prohibited acts; and whether the act be fraudulent will depend on the judgment which the law pronounces upon it."

This section of the statute again came under review in the supreme court of this state in the case of *Bullene* v. *Smith* (73 Mo. 151), where the proposition is well sustained that each of the several clauses of said section presents a separate, distinct, and independent ground of attachment; and that the legislature did not employ the several specified grounds as convertible terms. Each enumeration constitutes a cause of action and each of the terms employed possesses its own peculiar meaning and office in law. Therefore, the supreme court holds that a fraudulent disposition of property will not support a charge of a fraudulent conveyance or assignment, and *vice versa*.

Now there is no just pretence in the case at bar of any other attempt to transfer the property in question, than what is expressed or consummated by the written instruments in evidence. All other allegations, therefore, of fraud contained in the affidavit and the issues taken thereunder, may be eliminated from this inquiry. Nor does the proof, giving to it the most rigid scrutiny in quest of the evil design of the defendant, in our judgment warrant any jury in finding there existed in the breast of the defendant any purpose inconsistent with the language employed in the written instrument. We fail to discover in this record any tangible proof of the

existence of any secret trust or hidden arrangement between the parties for the benefit or protection of the defendant against the just rights of his creditors, outside of the papers themselves.

The fact that the deed contains a provision that any surplus remaining after the satisfaction of the grantor's debts should be returned or paid to him, cannot be held to be a fraudulent reservation to his use as against creditors, for that is precisely what the law, in the absence of any such stipulation, would direct. He reserves to himself no interest as against any of his creditors or the assignee, but only stipulated that the surplus, if any after satisfying all of his creditors, should be returned to him. This the law would accomplish for him with or without such express provision. And what the courts would enforce cannot be held to be fraudulent.—Burrill on Assignments, 4 ed. sects 206, 207.

This case, in this respect, is unlike that of *Bigelow et al.* v. *Stringer et al.* (40 Mo. 195), in its facts. There it appeared on the face of the deed that the debtor had conveyed an amount of property largely in excess of the aggregate of his debts; and by the very terms of the instrument, he tied up his property in the hands of the trustee, postponing his general creditors, for two years, manifesting thereby a purpose to secure to himself an increased surplus; again, by delaying and hindering his creditors in the collection of their debts. That was a fraud in law apparent on the face of the instrument. We fail to discover in this record, fairly and reasonably interpreted, any such disparity between the value of the property conveyed and the aggregate of the defendant's debts as would warrant the impeachment of the deed on that ground. In fact it is not too much to say, on this record, in view of the actual results of sales of such property under trustees or assignees, that if the creditors should realize the amount of their debts it would be quite unusual.

Nor are we able to perceive how the fact of the execution of the bill of sale, which Campbell induced the defendant to make, after the execution, delivery, and

recording of the deed, can be construed as an abandonment of the assignment. The transfer by deed was an accomplished fact, and no subsequent act of the debtor, without the consent of all parties thereto, could effect the legal operation of the consummated conveyance. Nor do we think it just, under the circumstances disclosed by the evidence, to say that it furnished such proof of a fraudulent combination between the debtor and the trustee, as to have warranted the jury in pronouncing a verdict thereon in favor of the plaintiffs. It is but fair to presume that Campbell supposed from the telegram received that the firm's lawyer had advised that the deed made might not avail for the protection of his house, and that he sought by taking the bill of sale to strengthen his case. That it was not designed to constitute an abandonment of the deed, is manifested by the fact that it was expressly stipulated on the back of the bill of sale that it should not so operate.

The issue, on trial, being: had the defendant fraudulently conveyed or assigned his property or effects *so as to hinder* or *delay* his creditors, it mattered not what opinion the grantor or assignor entertained as to the import of the terms employed in the instrument of conveyance. Its construction and effect are for the court as a question of law. If, as a matter of law, the effect and operation of the deed constituted an assignment for the benefit of creditors generally, *pari passu*, it is difficult to conceive how it can be said the defendant has fraudulently assigned his property so as to hinder or delay his creditors. The law, on the contrary, favors such assignments, as they operate for the protection and equality of all the creditors.—*Milliken* v. *Dart*, 26 Hun. 24.

There does not appear to be any serious controversy between counsel that the legal effect of the deed is an assignment under the statute; and such, we are of opinion, is its correct construction.—*State ex rel.* v. *Benoist et al.*, 37 Mo. 500, 508; Burrill on Assign., sects. 2, 3, *et seq.*; *Page* v. *Smith*, 24 Wis. 371, 372; *Lord* v. *Devendorf*, 54 Wis. 491; *Norton* v. *Kearney*, 10 Wis. 443.

Campbell appears to have qualified as assignee under

the deed.    Then by virtue of the statute, the transfer
inured to the benefit of all creditors, *pari passu*, not-
withstanding the expressed desire of the debtor to prefer
one of his named creditors.—Rev. Stat., sect. 354; *Hard-
castle* v. *Fisher*, 24 Mo. 70; *Shapleigh* v. *Baird*, 26 Mo.
326; *Crow* v. *Beardly*, 68 Mo. 455; *Lord* v. *Devendorf*,
*supra.*

Should the plaintiff maintain his action he thereby seeks
to accomplish that of which he complains, a preference
over the other creditors,—an inequality and injustice
which it is the design of the assignment law to prevent.  It
is held in New York that an attachment cannot be levied
on property in the hands of an assignee under a general
assignment of the debtor, notwithstanding the assign-
ment is fraudulent in law.—*Thurber* v. *Blank*, 50 N. Y.
80; *Smith* v. *Longmire*, 24 Hun. 257.

Appellants make the objection to the assignment that
the assignor failed, at the time of the execution of the
instrument, to make a statement accompanying it, as re-
quired by statute.—Rev. Stat. sect. 362.    The deed was
executed and put to record on the 6th day of December,
and the required statement was made on the 8th.    We
do not think this delay of the assignor would defeat the
conveyance in favor of the creditors, as they had no
control of the assignor in performing a duty imposed on
him by the statute, after the making of the deed.—
*Hardcastle* v. *Fisher*, *supra*; *Duvall* v. *Raisin*, 7 Mo.
499; *Robert* v. *Casey*, 25 Mo. 590.

We are of opinion that on the real issue in this case
the plaintiffs had a fair trial, and that the ends of justice
will be best subserved by affirming the judgment of the
circuit court, which is accordingly done.    Ellison, J.,
concurs; Hall, J., not sitting.

On motion for rehearing:

Opinion by Philips, P. J.

As many of the questions raised in the motion for
rehearing have been fully considered and determined in
the opinion filed herein, we will notice only such addi-
tional suggestions as are deemed material.

I.  It is claimed that the deed executed by Cissna was not operative at the time of levying the writ of attachment because the assigned property was not then in the hands of any named assignee, nor was any person, then named, capable of acting as such assignee, inasmuch as a partnership cannot act as assignee. This suggestion is incorrect, both in fact and law. The evidence showed, without contradiction, that at the time of the levy of the writ of attachment Campbell was in the actual, visible possession of the goods and store. He was one of the parties named in the deed as grantee, or trustee. The deed was made to Milton Tootle, Wm. E. Hosea, Chas. W. Campbell, W. W. Wheeler, and Joshua Motter. They were partners doing business under the firm name of Tootle, Hosea & Co.

"An assignment for the benefit of creditors may be made to a single individual or to several."—Burr on Assignments, sect. 91, 4th ed. And when it is made to several it is not essential to its validity that all should accept. Only those who do accept are required to act. An assignment to partners is good, and the acceptance of of the trust by one of the firm is sufficient.—Burr on Assignments, sect. 91; *Forbes* v. *Scannel*, 13 Cal. 243–288.

II.  It is next insisted that Campbell did not qualify as such assignee until after the attachment was sued out, and that he did so only because coerced thereto by attachment proceedings. The statute prescribes what action the assignee shall take, and the time in which he shall qualify. The deed was delivered to Campbell, and by him put to record before the levy of the writ of attachment. This, without more, would be evidence of acceptance under our statute, where the assignee had taken possession of the property.—*Price* v. *Parker*, 11 Iowa 144; *Forbes* v. *Scannel*, 13 Cal. 287. The statute, section 355, allows the assignee fifteen days within which to file his inventory, and by section 362 he is allowed three days, after filing the deed for record, to give bond as such assignee. This Campbell did within two days after filing the deed, and within three days from its

execution and delivery. These were the statutory evidences of his acceptance and qualification. Moreover, the deed of assignment took effect and became operative as such the moment it was delivered and accepted, and the assignee being in possession of the assigned property, the deed would prevail over any process intervening between that date and the giving of the bond by the assignee. This must be so because the statute allows him three days in which to further qualify.—*Brown* v. *Lyon*, 17 Ala. 659; *Claytin* v. *Johnson*, 36 Ark. 406.

The overzealous plaintiffs rushed in and seized the goods in the hands of the assignee before the statutory period had elapsed for filing the bond as assignee, and now their counsel assert that he did so only because of their hasty action. Admit that Campbell and Cissna contended that the deed gave Tootle, Hosea & Co. a preference, and that they said they would not regard it as a deed of assignment, how could this fact justify the attachment proceedings? Cissna had already made a deed of assignment. Campbell had accepted it, recorded it, and taken possession of the goods. The plaintiffs knew this fact when they sued out the writ of attachment. The statute then imposed on the assignee the duty to qualify as such by giving the bond and filing the inventory. He yet had three days in which to act. Plaintiffs had their plain remedy and recourse, if he failed to qualify and administer the trust. The courts never permit a trust to fail for the want of a trustee.—*Shockley* v. *Fisher*, 75 Mo. 502; Burr on Assignments, 268. One of the grounds, and the chief one, on which assignments for the benefit of creditors are supported is, "that courts of equity can compel the fair and faithful execution of the trusts they create. . . . After the assignee had taken possession of the property, the title and trust became fixed and executed, and it was not in the power of the assignors to defeat or affect it."—*Forbes* v. *Scannel*, *supra*.

Counsel in the discussion of this case seem not only to overlook the fact that deeds of assignment are favored

by the law and should be upheld by the courts because they beget equality among all the creditors by securing the administration of the assets under the supervision of the court, but, also, that from the moment the deed is executed and delivered each and all of the creditors, acquire an interest in the trust estate, and have a right to have the trust promptly administered under the statute. It is on this account that the courts quite uniformly hold that no act or word of either the assignor or the assignee, subsequent to the delivery of the deed, can, without the consent of the creditors, in any wise affect the validity and operation of the conveyance.— *Union National Bank* v. *Bank of Commerce*, 94 Ill. 27; *Gates* v. *Lebeaume*, 19 Mo. 27.

"The rights of creditors are fixed by the assignment, and without their knowledge or consent cannot be varied by any subsequent act of the assignor or assignee. If valid in its creation, no subsequent fraudulent or illegal acts of the parties can invalidate it."—Burr on Assignments, sects. 264–351, and citations. As is said by Wagner, J., in *Valentine* v. *Decker* (43 Mo. 544): "Where an assignment is fair and valid, the legal estate or title will pass to the assignee without any assent expressed by the creditors, and neither a subsequent judgment or lien creditor will acquire any interest in the property assigned, nor can he attack the assignment unless upon the ground of fraud. This doctrine flows from the common-law rule, that it is not necessary to the creation of a trust by deed in favor of any persons, that the *cestui que trust* should either be a party or assent to it. If the trust be for his benefit, the law presumes his assent to it till the contrary is shown. Such trusts have always been executed on the idea that the deed was complete when executed by the parties to it."

III. We are referred by counsel to Bump on Fraud, where he says: "The instrument must stand or fall upon the character impressed upon its face by the parties, and by them sent out to the world as expressing the contract and purposes of the parties to it." We think the learned

counsel unfortunate in this reference for their purpose.
It is no authority for their contention that the character
of the instrument is to be gathered from the outside de-
clarations of the parties, or the legal construction they
may have placed upon it. It must stand or fall by the
character *impressed upon its face.* There is no am-
biguity about the deed. It is plain and explicit. What
the parties, in the meaning of the author, sent out to the
world was impressed upon the face of the papers and
spread upon the records of the county. And, as we have
already stated, no subsequent bill of sale, with or without
the endorsement on the back of it, could in any degree
lessen the legal effect and operation of the sole act of
conveyance. Otherwise it could be that a debtor, after
making a formal deed of assignment, might avoid it and
vacate it as against all the other creditors by executing
to the assignee creditor a mere bill of sale.

IV. It is in this connection that we are referred by the
motion for rehearing to numerous decisions of the su-
preme court of this state as having been overlooked by
us in writing the opinion herein.

These cases all bear upon the doctrine of estoppel *in
pais.* But we are unable to conceive how the plaintiffs
can invoke the doctrine of estoppel against the defend-
ant. They were not content with what Campbell and
Cissna said about the sale, but their attorney demanded
to see the evidence of the transfer, which was exhibited
to him. The original was then on record. There was no
concealment. The deed spoke for itself. The parties had
impressed upon its face the nature of their arrangement.
Even to the unlearned in the law, the maxim applies
that every one is presumed to know the law, and we may
be pardoned for applying it to the instance of one learned
in the law. On its face it was a deed of assignment,
executed and recorded, and it was not in the power of
the parties to alter, modify, or evade it without the con-
sent of these very plaintiffs. The very basis of an es-
toppel *in pais* is fraud. The representation relied upon
"must have been made with the knowledge of the truth

to one *ignorant* of it." If A say to B that he has sold to C a horse, and at the time exhibit to B the bill of sale calling for a cow, and B at the time is shown the cow, how could he claim that A was estopped from afterwards denying that it was a horse? An estoppel is always removed by proof that the party asserting its existence, even though mistaken as to his rights in law, had notice of the true state of the facts when he acted.—Big. on Estop. 520. And this is especially so in respect of a question of title or right under a deed, where the deed is open to the inspection of the party, and the more so where he actually sees it.—*Bales* v. *Perry et al.*, 51 Mo. 453; *Kingman* v. *Graham et al.*, 51 Wis. 246. It is only where the conduct or representation of the party "becomes a fraud that it postpones." "If the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel."—*Bales* v. *Perry, supra.*

The whole truth of this matter is, that the plaintiffs misconceived the character and legal effect of the instrument of conveyance, and brought their attachment on the idea that it was a mere deed of trust, improperly attempting to prefer one creditor to the hurt of another; and because the plaintiffs did not know their rights they want the deed interpreted as they understood it.

V. It is claimed that the court did great injustice to counsel for plaintiffs in the opinion in saying that they had tried the case below, throughout, upon the question of the intent of defendant in making the deed, whereas in fact they "argued for a reversal against such construction being put to the jury." We have re-examined the instructions asked by the plaintiffs, some of which the court gave, and we again assert, that in fourteen instructions asked, the question of the defendant's intent in making the deed is made the foundation of recovery by plaintiffs; and the court was asked to declare to the jury, in one or more instructions, that if the defendant designed by deed to prefer Tootle, Hosea & Co., they should find for plaintiffs.

It is true, that in their brief, filed in this court, counsel face about and argue that "the private or secret motives" which influenced the defendant in making the deed should not have gone to the jury. This but illustrates a frequent occurrence. Parties too often try the case on one theory in the court below, and then argue another in the appellate court. But our province is to review the case as tried below, and to determine whether the trial court committed error to appellant's injury.

VI. Among the many controlling decisions of the supreme court, with which our opinion is alleged to conflict, is that of *Potter* v. *McDowell* (31 Mo. 69). In our humble opinion, the case is in perfect harmony with the views expressed by us in the opinion under review.

Scott, J., says : "The law does not concern itself with the private or secret motives which may influence the debtor. It does not deal with his conscience. He may make the deed with the most upright intentions, really believing that he has the right to do so, and yet if that deed was *voluntary* and *hinders* and *delays* creditors, it is fraudulent."

VII. I apprehend that some confusion often exists, in the minds of both judges and counsel in dealing with these questions, in confounding the grounds of attachment under our statute with the action to set aside deeds under the statute concerning fraudulent conveyances. Under the latter statute, "the intent to hinder, delay, or defraud creditors of their lawful actions" is made the gist of the action. But under the former statute, as we attempted to develop in the opinion herein, the imputed fraudulent conveyance must be such as to hinder or delay creditors.

And on further reflection and consideration we are persuaded that it is a contradiction in terms to say that a deed which amounts to an assignment under our statute, and operates for the benefit and protection of all the creditors of the debtor, can be held to hinder or delay creditors. As no motive or purpose of the grantor can possibly thwart its operation, or interrupt, or divert its

beneficent end, it would practically annul the statute of assignments to say that such a deed, accomplishing by its legal construction what the statute designed, could be assailed by a creditor in any form of action, simply because the debtor had some ulterior object outside of the deed in making it.

Speaking for myself, I very much question whether property in the hands of an assignee under a deed of assignment is the subject of seizure under an attachment. In the hands of the assignee it is in *custodia legis*, and not amenable to process. But it is not necessary to go so far in this case.

VIII. We reaffirm, also, after a re-examination of the evidence in this case, that there is nothing in this record which would warrant any jury in finding that there was any "trick or contrivance to defeat creditors," outside of the deed, which it was designed to promote or aid.

Counsel lay much stress upon the fact that there was evidence tending to show that Campbell had promised Cissna that he would "stock up the goods." Campbell testified that he told Cissna it was his intention to "stock up the goods," but it was not his agreement, and that he did not do so because Cissna did not ask him to do it. There was no evidence that it was to be done out of the proceeds of the stock conveyed, or that there was to be any delay in foreclosing the trust. And it is not conceivable that if the assignee, out of his own funds, should have bought new goods and put with the old to aid and enhance their sale, how any creditor could have justly complained. But it is sufficient to say, that the deed being an assignment, the statute prescribes the precise course of procedure by the assignee; and it was not possible for him to so conduct the trust so as, in contemplation of law, to hinder or delay any creditor. There was nothing on the face of the deed to make it inoperative as an assignment; and that is the end of this controversy.

We may not inappropriately conclude this review by applying the language of Lord Ellenborough in *Pick-*

*stock* v. *Lyster* (3 Man. & Sel. 371) : "The assignment is to be referred to an act of duty rather than of fraud, when no purpose of fraud is proved. The act arises out of a discharge of the moral duties attached to his character of debtor to make the fund available for the whole body of creditors. It is not the debtor who breaks in upon the rights of the parties by this assignment, but the creditor who breaks in upon them by proceedings in this suit." In the same case, Bayley, J., said: "It seems to me that this conveyance, so far from being fraudulent, was the most honest act the party could do. He felt that he had not sufficient to satisfy all his debts, and he proposed to distribute his property in liquidation of them ; this was not acceded to, for the plaintiff endeavored by legal process to obtain his whole debt, the obtaining of which would have swept away the property from the rest of the creditors."

It is, therefore, with little grace that plaintiffs now complain, if their attachment is not maintained, they will lose all, as they cannot be admitted to share in the distribution under the assignment after assailing it. — *Valentine* v. *Decker*, 43 Mo., *supra*.

*Duos qui sequitur lepores, neutrum capit.*

The motion for rehearing is denied. Ellison, J., concurs, Hall, J., not sitting.